# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, vs. EVA ORDAZ HERNANDEZ, Defendant. | No. 20-CR-2034-CJW-MAR **MEMORANDUM OPINION AND ORDER** |

_____

## I. INTRODUCTION

This matter is before the Court on defendant's Motion in Limine, filed on May 17, 2021. (Doc. 386). Defendant sought suppression of evidence establishing that her fingerprints were found on drug packaging material as a sanction on the ground that its late disclosure nine days before trial violated the government's discovery obligation. Trial in this matter was scheduled for May 24, 2021. The Court briefly addressed defendant's motion in limine at the final pretrial conference on May 17, 2021, and ordered briefing and an evidentiary hearing. (Doc. 388). Defendant filed a supplemental brief on May 17, 2021, attaching a document. (Doc. 391). The government filed a resistance to defendant's motion in limine on May 18, 2021. (Doc. 393). On May 19, 2021, the Court held an evidentiary hearing at which Special Agent John Austin of the Iowa Division of Narcotics Enforcement testified and the government submitted exhibits 1 through 5 into evidence. (Doc. 398). At the conclusion of the hearing, the Court orally pronounced its ruling denying defendant's motion in limine, but continuing the trial. This memorandum opinion supplements and elaborates on the basis for the Court's oral pronouncement of its ruling.

## II. PROCEDURAL HISTORY AND FACTUAL BACKGROUND

This case involves a 13-defendant drug conspiracy charge. Among other events taking place as part of the criminal investigation, in February 2020, law enforcement agents conducted a controlled buy of four pounds of methamphetamine. *See* (Doc. 393, at 3–4). Later that same month, the packaging material for the drugs purchased in February 2020 was submitted to the Iowa Division of Criminal Investigation ("DCI") laboratory to be checked for latent fingerprints and compared against a number of suspected members of the conspiracy. (*Id.*, at 5). At that time, the agents did not request the laboratory check for the presence of defendant's prints because, although she was a suspect, the agents did not have sufficient identification information about her to identify her fingerprints for comparison. On July 22, 2020, the grand jury returned the original indictment naming a number of defendants, but not including defendant Eva Ordaz Hernandez. (Doc. 8).

On October 21, 2020, the grand jury returned a superseding indictment which added additional defendants, including defendant. (Doc. 70). On November 4, 2020, defendant made her initial appearance on the charge. (Doc. 112). Defendant and the government entered into a stipulated discovery order on that date. (Doc. 114). That order reads, in pertinent part:

> The United States will include in its discovery file, or otherwise make available, law enforcement reports (excluding evaluative material of matters such as possible defenses and legal strategies, or other attorney work product), grand jury testimony and evidence or existing summaries of evidence in the custody of the United States Attorney's Office that provide the basis for the case against the defendant. The file will include Rule 16, *Brady*, and *Jencks* Act materials of which the United States Attorney's Office is aware and possesses.

2

(*Id.*, at 1). The Court initially scheduled trial for January 4, 2021. (Doc. 115). On December 17, 2020, however, the Court granted several defendants' motions to continue the trial to May 24, 2021. (Doc. 174).

On March 9, 2021, as part of his continued work on the investigation, Special Agent Austin resubmitted to the DCI laboratory the latent fingerprints found on the drug packaging from the February 2020 controlled buy, asking the laboratory to compare the prints against a number of people, charged and not charged, including defendant. (Exhibit 3).[1] Special Agent Austin apparently did not tell the federal prosecutors working on the case that he had done this.

On March 10, 2021, the DCI acknowledged the request. (*Id.*).

On April 21, 2021, the DCI generated a report on that request, identifying defendant's latent prints on the drug packaging. (Exhibit 2). Because the requests were submitted through the Tri-County Drug Task Force, the listed agency was the Waterloo Police Department. At the hearing, Special Agent Austin was unable to state whether the DCI laboratory actually contacted someone at the Waterloo Police Department about the results, but no one contacted him.

On May 13, 2021, as part of his preparation for trial in this case, Special Agent Austin recalled that he had resubmitted the latent print request. He accessed the DCI database and found the April 21, 2021 laboratory report. On the same day, at 11:37 a.m., Special Agent Austin forwarded a copy of the laboratory report to the lead federal prosecutor. (Exhibit 4). Special Agent Austin also followed that up with a telephone call to alert the prosecutor of the report. The federal prosecutor produced the report to defense counsel on the same day. (Doc. 386, at 1).

---

[1] Defendant is referred to as Eva Sanchez Ordaz in this email.

### III. ANALYSIS

Defendant requests the Court "preclude the government from introducing any evidence regarding the fingerprint test results from the attached April 21, 2021, report [because it] was not disclosed in a timely manner which allows the defense adequate time for preparation for trial." (*Id.,* at 2). Defendant cites *United States v. Davis*, 244 F.3d 666, 670 (8th Cir. 2001) and Federal Rule of Criminal Procedure 16(d)(2)(C). (*Id.*). Rule 16(d)(2)(C) provides that a court may preclude a party from introducing undisclosed evidence "[i]f a party fails to comply with" Rule 16's discovery obligations. As it applies to reports of examinations and tests, Federal Rule of Criminal Procedure 16 provides

> (F) Reports of Examinations and Tests. Upon a defendant's request, the government must permit a defendant to inspect and to copy or photograph the results or reports of any physical or mental examination and of any scientific test or experiment if:
> (i) the item is within the government's possession, custody, or control;
> (ii) the attorney for the government knows—or through due diligence could know—that the item exists; and
> (iii) the item is material to preparing the defense or the government intends to use the item in its case-in-chief at trial.

FED. R. CRIM. P. 16(a)(1)(F). This language is similar to that found in the stipulated discovery order, which requires the government to provide to defense counsel "Rule 16 . . . materials of which the United States Attorney's Office is aware and possesses." (Doc. 114, at 1).

Here, the evidence is that on March 9, 2021, Special Agent Austin resubmitted the fingerprints for comparison against defendant's known prints and that he received the report of that examination on May 13, 2021. The evidence also shows that the government attorneys provided the report of the examination to defense counsel on the same day. Although the report was within the government's possession, custody, and

4

control as of April 21, 2021, when the report was generated by someone at the DCI laboratory, the attorneys for the government did not know of the report's existence before May 13, 2021. Nor could the government attorneys have done more to know—been more diligent in knowing—because Special Agent Austin had not made them aware that he had resubmitted the fingerprints for examination. The most that could be said is that perhaps Special Agent Austin was not as diligent as he could have been in checking up on the results sooner than he did.[2] But Rule 16 speaks of the diligence of counsel, not the diligence of their agent. Thus, the Court finds that the government did not violate its discovery obligations under Rule 16.

As for the *Davis* case, the Court finds it easily distinguishable. Moreover, the Court finds the district court's analysis flawed in at least two ways. An explanation here requires a thorough review of the *Davis* decision.

In *Davis*, the defendant was charged with bank robbery during which the suspects were wearing masks and stocking caps. 244 F.3d at 667–68. On February 4, 2000, the DCI received DNA samples from the defendants, along with the stocking caps and masks. *Id*. at 668. On February 18, 2000, the defendants made their initial appearance in federal court. *Id*. The court set a deadline of February 28, 2000, for the government to produce its discovery to defendants. *Id*. Trial was scheduled for April 3, 2000. *Id*. On March 24, 2000, an FBI agent requested the DCI lab expedite the DNA analysis. *Id*.

---

[2] The Court makes even this observation with great reservation. This case is very complex with thousands of documents, and this is not the agent's only case. No one familiar with the extremely taxing demands of law enforcement agents working federal investigations and preparing for trial would fail to appreciate the difficulty of that responsibility. In a perfect world, every case receives an agent's undivided and uninterrupted attention. This is not, however, a perfect world. This agent did the best he could under the pressing circumstances; that he forgot for a brief period of time that he submitted evidence for fingerprint analysis is understandable and forgivable. Once he discovered the report through his own efforts, he acted expeditiously in producing it to the prosecutors. There is absolutely no evidence that Special Agent Austin intentionally delayed obtaining the report or acted in bad faith in any way.

5

On March 27, 2000, the court held a hearing on a defendant's motion for discovery on other matters, but the government did not mention the DNA analysis. *Id.* Indeed, the prosecutor told the judge at that hearing that the case was ready for trial. *Id.*, at 671-72. On March 30, 2000, the court held a hearing on a motion to sever at which the defense mentioned DNA evidence. *Id.*, at 668. When the court inquired of the DNA evidence, the prosecutor said the report would be produced the next day, but stated that the prosecutor had informed defense counsel of the preliminary results just before the hearing. *Id.* On March 31, 2000, the Friday before the Monday trial, the government produced the DNA examination report to defense counsel. *Id.* The DNA report showed that DNA from the masks and stocking caps matched the defendants' DNA. *Id.* Finding a violation of the discovery rules and because a continuance would leave the court unable to fill the week of April 3, 2000, with another trial, the court found that the appropriate sanction was precluding the evidence. *Id.*, at 670.

The *Davis* court found that the government violated its Rule 16 discovery obligations, and the government did not defend its failure to comply with the discovery deadline, but rather only challenged the sanction. *Id.*, at 671. The court found the government did not provide any explanation for the delay in producing the evidence, emphasizing that the government could have sought expedited analysis sooner. *Id.* The court found that the defendants were highly prejudiced because the defense was not even told that evidence was being processed for DNA until three days before trial, and did not receive the report until the Friday before a Monday trial. *Id.* As for choice of sanction, the Court found it was not an abuse of the court's discretion to exclude the evidence because "a continuance would have ignored significant scheduling problems . . [because] it was too late to reschedule for trial other previously continued criminal cases, which would have left the district court with a very crowded criminal docket but no criminal case ready for trial." *Id.*, at 672. In short, the court found that "the government was

6

more than negligent; the district court found that the government had acted in reckless disregard of the discovery deadline and offered no explanation for its failure to comply." *Id.*, at 673.

First, *Davis* is distinguishable from this case in several respects. In *Davis*, the court found the government violated Rule 16; here, the Court finds no such violation. In *Davis*, the court found the government's conduct reckless; here, the Court finds the prosecutors completely blameless for any delay and, at most, finds that the agent perhaps could have been more diligent. In *Davis* the government had a hard deadline for producing discovery; here, the government did not. In *Davis*, the government produced the discovery on the last business day and three days before trial; here, the government produced the report nine days before trial. It is also not at all clear in *Davis* when the prosecutor knew that the DNA was being analyzed; here, the record is clear that the prosecutors did not know the packaging was submitted for fingerprint analysis until the day they received the report and immediately produced it to defense counsel.

*Davis* is also distinguishable, and the Court believes its analysis flawed, on the issue of the least severe sanction. When a court finds the government has committed a discovery violation,

> In determining a suitable and effective sanction, a court must weigh the reasons for the government's delay and whether it acted intentionally or in bad faith; *the degree of prejudice, if any, suffered by the defendant*; and whether any less severe sanction will remedy the prejudice and the wrongdoing of the government.

*Davis*, 244 F.3d at 670 (quoting *United States v. Hastings*, 126 F.3d 310, 317 (4th Cir. 1997)) (emphasis added). In finding a continuance was not an appropriate sanction, the *Davis* court focused on the prejudice to the trial court's docket and scheduling difficulties. The prejudice that matters is that suffered by the defendant, not the court. Even if this Court found that its own scheduling difficulties should factor into its analysis of an

7

appropriate sanction, which the Court does not, here the Court does not find its docket will be harmed by a continuance. To be sure, this Court is extremely busy and by continuing this trial the Court will not be able to substitute other trials that await. But the Court regularly juggles its trial docket and a continuance has no greater impact on the Court than if defendant had decided to plead guilty at the last minute. Thus, even if the Court had found a Rule 16 violation (which it has not) and even if it agreed with the *Davis* decision that its own schedule mattered to the analysis, the Court finds here that granting a continuance would not substantially impact its administration of justice.

Last, in *Davis* the court found the delay in requesting an expedited analysis of the evidence for DNA to be relevant and problematic. At the hearing in this case, defendant asked the Court to focus on what he believed was an unreasonable delay by the agent of months after defendant's arraignment to seek re-examination of fingerprints. The Court finds this focus to be inappropriate. Discovery obligations exist to ensure that each side has an even playing field by having access to the same evidence in a sufficiently timely manner such that one side does not gain an advantage over the other. The key is that the rules require the attorneys to disclose to each other the evidence of which the attorneys are aware. There is no rule of discovery that requires attorneys for either side to acquire evidence; it requires disclosure of existing evidence. In this respect, the government has no statutory discovery obligation to submit any evidence to a laboratory for DNA or fingerprint analysis or for any other reason. Indeed, in many cases, the government declines to submit evidence to a laboratory due to a cost-benefit analysis of the likelihood of finding useful evidence against the burden on limited resources. Thus, that an agent delays submission of evidence to a laboratory for analysis, or in this case does so but for a while forgets about the evidence, makes no difference whatsoever on whether the attorneys for the government have complied with their obligation to disclose to the defense in a timely manner all evidence of which the attorneys are aware. Here, the

8

government turned over to defense counsel the report of examination on the very day it became aware of it. Whatever delay occurred before that is irrelevant in determining if the government violated its discovery obligations.

In short, the Court finds the government did not violate Rule 16 or its discovery obligations under the stipulated discovery order. The practical reality here, though, is that through no fault of the government attorneys, a very important and complex piece of evidence—a fingerprint report linking defendant to packages of methamphetamine—was provided to defense counsel nine days before trial. This places defendant at a distinct disadvantage for several reasons. First, had she known of this evidence previously, it may have impacted her decision whether to plead guilty. Given the late arrival of this evidence, the deadline for her to plead guilty and still receive a third-level reduction in the guidelines offense level for acceptance of responsibility has passed. Second, defendant needs time to analyze this evidence and determine whether there are flaws or mistakes in the analysis, which may take expert assistance.

Thus, the Court finds that a continuance of the trial is necessary in the interests of justice. At the hearing, the Court announced that it intended to continue the trial and, based on its calculation of the speedy trial clock, could continue the trial for approximately 40 days. The Court inquired of defense counsel, however, whether defendant would like a longer continuance to address this evidence. Defendant requested, and the Court granted, a 90-day continuance of the trial. The Court also announced that it would reset the deadlines for acceptance of responsibility accordingly.

## IV. CONCLUSION

For these reasons, the Court **denied** defendant's motion in limine. (Doc. 386). In the interests of justice, and upon oral motion by defendant, the Court continued the trial by separate order. (Doc. 399).

**IT IS SO ORDERED** this 21st day of May, 2021.

_____
C.J. Williams
United States District Judge
Northern District of Iowa